34 P.3d 1055

Gregory K. WILLIAMSON,
Petitioner–Appellant,

v.

HAWAI'I PAROLING AUTHORITY,
Respondent–Appellee.

No. 22882.

Intermediate Court of Appeals of Hawai'i.

Nov. 22, 2000.

Certiorari Granted Dec. 26, 2000.

Gregory K. Williamson, Petitioner–Appellant, pro se, on the briefs.

Lisa M. Itomura, Deputy Attorney General, for Respondent–Appellee, on the briefs.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by FOLEY, J.

Petitioner-Appellant Gregory K. Williamson (Williamson) appeals the September 20, 1999, judgment of the circuit court dismissing his petition for post-conviction relief. Williamson claimed that the Hawai'i Paroling Authority (HPA) could not set his minimum

terms of imprisonment at the same length as his court-imposed maximum terms of imprisonment. We agree with Williamson. The circuit court's September 20, 1999, judgment dismissing Williamson's petition for post-conviction relief is vacated and this case is remanded to the circuit court.

### I.

Williamson was sentenced by the circuit court to concurrent maximum indeterminate terms of five years imprisonment for Assault in the Second Degree and Burglary in the Second Degree. The HPA set Williamson's minimum terms of imprisonment at five years—the same amount of time as his maximum terms.

Pursuant to Rule 40 of the Hawaiʻi Rules of Penal Procedure (HRPP), Williamson filed a petition for post-conviction relief (Rule 40 petition) in the circuit court. In his Rule 40 petition he claimed that, pursuant to Hawaii Revised Statutes (HRS) § 706–669(1) (1993), the HPA violated his right to be "eligible for parole" in setting his minimum terms of imprisonment at the same length as his maximum terms of imprisonment. The circuit court ruled that Williamson's Rule 40 petition was not the proper vehicle to challenge the HPA's action because it did not "raise issues of illegality of judgment as described in HRPP Rule 40(a)(1) or illegality of restraint or custody described in HRPP Rule 40(a)(2)." Pursuant to HRPP Rule 40(c), the circuit court then ordered Williamson's Rule 40 petition to be forwarded to the clerk of the first circuit court to be processed and served as a civil proceeding.

Once Williamson's Rule 40 petition was processed and served as a civil proceeding, the HPA moved to have the petition dismissed. The circuit court granted the HPA's motion, and Williamson filed his timely appeal.

### II.

■ A Rule 40 petition is an appropriate means for an inmate to challenge the minimum term of imprisonment set by the HPA. Rule 40(a)(2) provides:

(2) *From Custody.* Any person may seek relief under the procedure set forth in this rule from custody based upon a judgment of conviction, on the following grounds:

(i) that sentence was fully served;

(ii) that parole or probation was unlawfully revoked;

or

(iii) any other ground making the custody, though not the judgment, illegal.

This court has previously ruled that a Rule 40 petition is an appropriate means for an inmate to challenge the denial of parole by the HPA. *Turner v. Hawaiʻi Paroling Authority,* 93 Hawaiʻi 298, 1 P.3d 768 (App. 2000). The Hawaiʻi Supreme Court has reviewed an appeal from a denial of a Rule 40 petition that challenged maximum sentences imposed by the circuit court and minimum sentences set by the HPA without any comment or suggestion that the Rule 40 petition was an inappropriate means for reviewing a minimum term of imprisonment set by the HPA. *Barnett v. State,* 91 Hawaiʻi 20, 979 P.2d 1046 (1999).

The HPA sets minimum terms of imprisonment (which it can reduce), considers inmates for parole, and may revoke parole. Hawaiʻi Rules of Penal Procedure expressly states that Rule 40 is an appropriate means to review an unlawfully revoked parole. Our discussion in *Turner* made it clear that a Rule 40 petition is an appropriate means to challenge a denial of parole. Rule 40(a)(1) [1] states that a Rule 40 petition is an appropri-

---

**1.** HRPP Rule 40 states in part:

**Rule 40. Post-conviction proceeding.**
(a) **Proceedings and Grounds.** The post-conviction proceeding established by this rule shall encompass all common law and statutory procedures for the same purpose, including *habeas corpus* and *coram nobis;* provided that the foregoing shall not be construed to limit the availability of remedies in the trial court or on direct appeal. Said proceeding shall be applicable to judgments of conviction and to custody based on judgments of conviction, as follows:

(1) *From Judgment.* At any time but not prior to final judgment, any person may seek relief under the procedure set forth in this rule from the judgment of conviction, on the following grounds:

(i) that the judgment was obtained or sentence imposed in violation of the constitution of the United States or of the State of Hawaiʻi;

ate means to challenge an illegal sentence imposed by a circuit or district court. We can find nothing in HRPP Rule 40 to indicate that a Rule 40 petition is (1) an appropriate means to challenge some actions of the HPA but *not* an appropriate means to challenge an illegal minimum term of imprisonment set by the HPA, or (2) an appropriate means to challenge an illegal sentence set by a court but *not* a minimum term of imprisonment set by the HPA. This would be an "absurd and unjust result, and would be clearly inconsistent with the purposes" of HRPP Rule 40. *Sherman v. Sawyer*, 63 Haw. 55, 59, 621 P.2d 346, 349 (1980).

Rule 40(a)(2)(iii), which states that any person may seek relief from custody pursuant to Rule 40 on "any other ground making the custody, though not the judgment, illegal," is the authority for Williamson's Rule 40 petition. In *Turner*, we concluded that a Rule 40 petition was an appropriate means to challenge an HPA action denying parole to an inmate as a "ground making the custody" of an inmate "illegal." 93 Hawai'i at 306, 1 P.3d at 776. Clearly, under the same rationale, a Rule 40 petition should be deemed an appropriate means to challenge the illegal custody of an inmate denied a parole hearing if such a hearing is required by law. The Hawai'i Supreme Court's decision in *Barnett* appears to be consistent with this result. If this were not the case, the circuit court and supreme court in *Barnett* should not have reviewed the minimum terms of imprisonment set by the HPA.

The circuit court erred when it ordered that Williamson's Rule 40 petition be for-

(ii) that the court which rendered the judgment was without jurisdiction over the person or the subject matter;

(iii) that the sentence is illegal;

(iv) that there is newly discovered evidence; or

(v) any ground which is a basis for collateral attack on the judgment.

For the purposes of this rule, a judgment is final when the time for direct appeal under Rule 4(b) of the Hawai'i Rules of Appellate Procedure has expired without appeal being taken, or if direct appeal was taken, when the appellate process has terminated, provided that a petition under this rule seeking relief from judgment may be filed during the pendency of direct appeal if leave is granted by order of the appellate court.

warded to the clerk of the first circuit court to be processed and served as a civil proceeding.

## III.

The circuit court also erred when it granted the HPA's motion to dismiss Williamson's Rule 40 petition for post-conviction relief. The circuit court should have denied the HPA's motion to dismiss and granted Williamson's Rule 40 petition as a matter of law, no facts being in dispute. The circuit court should have ordered the HPA to reduce Williamson's minimum terms of imprisonment to make Williamson eligible for a parole hearing.

Williamson was convicted and sentenced for two class C felonies. Hawaii Revised Statutes § 706-660 (1993) provides that a person convicted of a class C felony may be sentenced to an indeterminate term of imprisonment of five years (as was Williamson) with the minimum term of imprisonment to be determined by the HPA in accordance with HRS § 706-669 (1993 & Supp.1999).

Hawaii Revised Statutes § 706-669(1) (1993) provides that when a person has been sentenced to an indeterminate or an extended term of imprisonment, the HPA "*shall*, as soon as practicable but no later than six months after commitment to custody of the director of the department of public safety hold a hearing, and on the basis of the hearing make an order fixing the minimum term of imprisonment to be served before the prisoner shall become eligible for parole."[2] (Brackets deleted, emphasis added.)

2. The HRS Commentary on § 706-669 (1993) states:

This section continues the policy of the previous law of vesting in the Board of Paroles and Pardons the exclusive authority to determine the minimum time which must be served before the prisoner will be eligible for parole. However, the Code differs from present law in two respects: (a) *it does not recognize a sentence of imprisonment not subject to the possibility of parole except the instances enumerated in § 706-606(a)*, and (b) it provides that the order of the Board shall be made upon the basis of a prior hearing which, under subsection (3), affords the prisoner an opportunity to be heard and a mode for participation. Both concepts are suggested by the Model Penal Code. In addition, subsection (3) specifically provides that the prisoner will be

Hawaii Revised Statutes § 706–670 (1993 & Supp.1999) provides in part:

§ 706–670 **Parole procedure; release on parole; terms of parole, recommitment, and reparole; final unconditional release.** (1) Parole hearing. A person sentenced to an indeterminate term of imprisonment shall receive an initial parole hearing at least one month before the expiration of the minimum term of imprisonment determined by the Hawaii [Hawai'i] paroling authority pursuant to section 706–669. If parole is not granted at that time, additional hearings shall be held at twelve-month intervals or less until parole is granted or the maximum period of imprisonment expires. [Supp.1999]

. . . .

(6) Sentence of imprisonment includes separate parole term. A sentence to an indeterminate term of imprisonment under this chapter includes as a separate portion of the sentence a term of parole or of recommitment for violation of the conditions of parole. [1993.]

Hawaii Revised Statutes § 353–62 (1993) provides in part:

§ 353–62 **Hawaii [Hawai'i] paroling authority; responsibilities and duties; operations; records, reports, staff.** (a) In addition to any other responsibility or duty prescribed by law for the Hawaii [Hawai'i] paroling authority, the paroling authority shall:

. . . .

(2) In selecting individuals for parole, consider for parole all committed persons, except in cases where the penalty of life imprisonment not subject to parole has been imposed, regardless of the nature of the offense committed;

afforded assistance and representation by counsel, if the prisoner wishes.

Subsection (2) continues the previous requirement that the Board of Paroles arm itself with sufficient information concerning the prisoner before it makes a determination as to parole eligibility. Subsection (4) is a continuation of the previous policy of granting to the Board the authority to impose a special condition relating to the prisoner's behavior before the prisoner will be eligible for parole. Subsection (5) gives the Board the discretionary power to reduce the

(3) Determine the time at which parole shall be granted to any eligible individual as that time at which maximum benefits of the correctional institutions to the individual have been reached and the element of risk to the community is minimal[.]

Hawaii Revised Statutes § 353–64 (1993) provides in part:

§ 353–64 **Committed persons paroled.** Any committed person confined in any state correctional facility in execution of any sentence imposed upon the committed person, except in cases where the penalty of life imprisonment not subject to parole has been imposed, shall be subject to parole in manner and form as set forth in this part[.]

■ Hawaii Revised Statutes §§ 706–669, 706–670, 353–62, and 353–64 must be read together. *State v. Yip*, 92 Hawai'i 98, 114, 987 P.2d 996, 1012 (App.1999). Together these statutory provisions make it clear that every inmate sentenced to an indeterminate sentence is entitled to a parole hearing. *Sherman v. Sawyer*, 63 Haw. at 59, 621 P.2d at 349 ("court is bound by the plain, clear and unambiguous language of the statute"). Section 706–669 states a prisoner *shall* become eligible for parole after serving his minimum term of imprisonment. Section 706–670(1) (Supp.1999) states a "person sentenced to an indeterminate term of imprisonment *shall receive an initial parole hearing* at least one month before the expiration of the minimum term of imprisonment" (emphasis added). Section 353–62(a)(2) directs the HPA to consider for parole *all committed persons,* except in cases where the penalty of life imprisonment without parole has been imposed. There is no exception for commit-

minimum term previously fixed by its order. Subsection (6) insures that a record of the hearing will be made and preserved. [Footnote omitted; emphasis added.]

This Commentary indicates that HRS § 706–669 contemplates sentenced felons having the opportunity to be paroled, except for felons sentenced to life without the possibility of parole for murder. Section 706–606(a) (sentence for offense for murder) is now HRS § 706–656 (Terms of Imprisonment for First and Second Degree Murder and Attempted First and Second Degree Murder).

ted persons receiving minimum terms of imprisonment from the HPA. And finally, § 353–64 provides that *any committed person* except those sentenced to life imprisonment without parole "*shall be subject to parole*" (emphasis added).

 By setting the same minimum term of imprisonment as the maximum term of imprisonment, the HPA has denied Williamson a meaningful parole hearing before his minimum sentences expire. Under HRS § 706–670(1), Williamson would still be entitled to a parole hearing at least one month before his minimum sentence expires, but he could not be placed on parole unless the HPA reduced his minimum terms of imprisonment. Section 706–669(5) (Supp.1999) states that the HPA in its discretion may reduce the minimum term of imprisonment. Section 706–669(5) does not contemplate minimum terms being the same as maximum terms because the HPA would then have *no* discretion but to reduce a minimum term of imprisonment to allow an inmate to have a meaningful parole hearing.

The statutory scheme establishing the HPA and providing for the setting of minimum terms of imprisonment and parole clearly contemplated a minimum term of imprisonment that was a lesser term than an inmate's maximum term of imprisonment— thereby giving each inmate (except those sentenced to life without parole) an opportunity to be paroled.[3] A "reasonable period of time should intervene between such minimum and maximum sentences." *Territory v. Lake*, 26 Haw. 764, 771–72 (1923).

### IV.

The September 20, 1999, judgment of the circuit court dismissing Williamson's Rule 40 petition for post-conviction relief is vacated and this case is remanded to the circuit court, which shall grant Williamson's Rule 40 petition and direct the HPA to reduce his minimum terms of imprisonment to allow a reasonable period of time to intervene between Williamson's minimum and maximum

terms of imprisonment. The HPA may reduce Williamson's minimum terms of imprisonment pursuant to its power under HRS § 706–669(5) and shall not be required to hold a hearing, with its attendant requirements, pursuant to HRS § 706–669(1).

---

3. The HPA, however, cannot set a minimum term of imprisonment that is less than a mandatory minimum period of imprisonment without the possibility of parole set by a sentencing court pursuant to HRS § 706–606.5 (Sentencing of Repeat Offenders). If a person receives a mandatory minimum period of imprisonment pursuant to § 706–606.5 that is the same as his maximum term of imprisonment, the person would not be eligible for parole.