**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000026**
**05-FEB-2021**
**07:52 AM**
**Dkt. 77 MO**

NO. CAAP-19-0000026

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


TAD MASON, Petitioner-Appellant, v.
HAWAII PAROLING AUTHORITY and STATE OF HAWAI'I,
Respondents-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(S.P.P. NO. 18-1-001; CR. NO. 93-349)


MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Hiraoka and Nakasone, JJ.)

Defendant-Appellant Tad Mason (**Mason**), self-represented, appeals from the Order Denying Petition to Vacate Illegal Sentence, Set Aside Minimum Term Order or to Release Petitioner from Custody (**Order Denying Petition**), entered on December 19, 2018, by the Circuit Court of the Third Circuit (**Circuit Court**).[1] The Circuit Court denied Mason's April 9, 2018 Petition to Vacate Illegal Sentence, Set Aside Minimum Term Order or to Release Petitioner from Custody (**Rule 40 Petition**). In the

---

[1] The Honorable Greg K. Nakamura presided.

Rule 40 Petition, pursuant to Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 40, Mason challenged, *inter alia*, the July 1, 1996 Notice and Order Fixing Minimum Term(s) of Imprisonment (**Minimum Term Order**) issued by the Hawaiʻi Paroling Authority (**HPA**).[2]

I.    BACKGROUND

On September 16, 1993, pursuant to a grand jury indictment, Mason was charged with the Murder and Kidnapping of Juliana Laysa (**Laysa**) on August 27, 1991, in violation of Hawaiʻi Revised Statutes (**HRS**) § 707-701.5 (1993)[3] (Count I; Murder in the Second Degree) and HRS § 707-720(1)(d) and/or (e) (1993)[4] (Count II; Kidnapping).  According to police reports that were referenced in Mason's Presentence Diagnosis and Report, after initially denying involvement, John Perez (**Perez**) gave the police several statements about the incident.  Perez reported that he and Mason were cruising in downtown Hilo when they saw Laysa. Perez said that Mason dropped off Perez at a cemetery and Mason

---

[2]    On November 1, 2012, a substantively identical Notice and Order of Fixing Minimum Term(s) of Imprisonment was issued by HPA to correct a typo in an identifying number.

[3]    HRS § 707-701.5 provides, in relevant part: "a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person."

[4]    HRS § 707-720 provides, in relevant part:

    (1) A person commits the offense of kidnapping if
    the person intentionally or knowingly restrains another
    person with intent to:
        . . . .
        (c) Facilitate the commission of a felony or
            flight thereafter;
        (d) Inflict bodily injury upon that person or
            subject that person to a sexual offense; [or]
        (e) Terrorize that person or a third person[.]

went back and picked her up and took her back to the cemetery, where they both had sex with her, and Mason paid her $50. According to Perez, Mason then punched Laysa, slammed her on the ground, and told Perez to open the trunk of the car; Mason put Laysa in the trunk.  After getting in the car, Mason reportedly told Perez he was going to kill Laysa.  They drove to a cane field.  Perez stated that as Mason was trying to pull Laysa from the trunk, she was kicking and punching; Mason got upset and struck her head on the bumper of the car.  As she was crawling away, Mason took off her clothes and struck her on the head and body with a tire iron.  Perez and Mason then grabbed rocks and threw them at Laysa; Mason choked her, but she was still not dead.  Mason then grabbed her arms and placed his foot on her throat.  Perez reported that Mason used the tire iron and "poked" it through her naval; both men put a screwdriver in her vagina. Mason denied any knowledge of the victim or her death; he told police that Perez arranged for him to have sex with women, but he did not pay for sex.  In a separate case, Perez pled no contest to Murder in the Second Degree and was sentenced to Life in Prison with the Possibility of Parole.  Mason pled not guilty to both charges.  Perez gave testimony at Mason's trial that was consistent with his report to the police.

Pursuant to a jury verdict, Mason was convicted and found guilty of both charges.  On January 12, 1996, the Circuit Court entered a Judgment Guilty Conviction and Sentence

(**Judgment**), in which the court sentenced Mason to Life Imprisonment with Possibility of Parole as to Count I and twenty years of imprisonment for Count II, with the terms to run concurrently.  Mason filed an appeal from the Judgment.  On March 11, 1997, the Hawai'i Supreme Court summarily affirmed the Judgment.

While the direct appeal was pending, HPA issued the July 1, 1996 Minimum Term Order, setting Mason's minimum terms of imprisonment at thirty years for the murder charge and six years for the kidnapping charge.

On June 27, 2000, Mason filed his first petition pursuant to HRPP Rule 40, alleging that his conviction was unconstitutional on various grounds, and that due to newly discovered evidence, his conviction should be vacated, and his case should be remanded for a new trial (**First Rule 40 Petition**). After various (eleven) hearings at which, *inter alia*, additional evidence was adduced, on April 26, 2010, the Circuit Court entered Findings of Fact, Conclusions of Law, and Order Denying Petitioner's Petition for Post Conviction Relief (**Order Denying First Rule 40 Petition**).[5/]  As Mason later described in his appeal from the Order Denying First Rule 40 Petition, the claims made in the First Rule 40 Petition fell into five broad categories: ineffective assistance of trial counsel; mistakes made by the

_____

[5/]      The Honorable Glenn S. Hara presided.

trial court that denied Mason a fair trial; ineffective assistance of appellate counsel; newly discovered evidence; and application of an improper standard of review by the first Rule 40 court and denial of a request to postpone a decision and set the matter for further hearing.  On November 4, 2011, this court entered a Summary Disposition Order affirming the Order Denying First Rule 40 Petition.

It appears that, at some point, Mason submitted a request to HPA requesting a reduction of Mason's minimum term of imprisonment.  This request is not included in the record on appeal in this case.  On October 4, 2017, the HPA issued a decision denying Mason's request for a reduction of his minimum term on the grounds that "Your [Mason's] Minimum remains appropriate."

On April 9, 2018, Mason filed the Rule 40 Petition, which is at issue in this appeal.  Mason raised the following grounds for relief:  (1) the Legislature cannot delegate its authority to the HPA to prescribe a range of minimum terms of imprisonment, make its own findings, and set a particular minimum punishment range; (2) even assuming that HPA can prescribe a range for minimum term sentence, HPA's setting of a minimum term based on variable minimum term ranges increases the penalty for the crime; (3) HPA ignored and violated its guidelines and rules in setting Mason's minimum term, acting arbitrarily and capriciously, by:  (a) failing to state the Level of Punishment

and Significant Criteria in the Minimum Term Order, as required by Section III of HPA's July 1989 Guidelines for Establishing Minimum Terms of Imprisonment (**HPA Guidelines**), and (b) failing to follow rules in setting of minimum terms that were established and applied in other cases, in particular the case of Raita Fukusaku; (4) HRS § 706-669(8) (2014), delegating authority to HPA to prescribe the minimum period of incarceration, is unconstitutionally vague, as HPA is left to its own devices, setting minimum terms in an arbitrary and capricious manner, and HPA Guidelines are procedurally inadequate to provide a uniform sentence, because:  (a) there are no sentencing factors for setting minimum terms within each level of punishment; (b) there is no rational basis for a uniform minimum term, when the "Back-Door" is open allowing an arbitrary and capricious granting or denial of the reduction of the minimum; and (c) HPA's setting a minimum term is based on criteria of "Nature of Offense" and "Degree of Injury/Loss to Person or Property.".

In his prayer for relief, Mason requested that:  (1) the Minimum Term Order be vacated; (2) HRS § 706-669(8) be declared unconstitutionally vague and that it be ordered and declared that adding a prescribed range for a minimum term constitutes elements of a separate aggravated offense and thereby increased Mason's penalty for the offense; (3) it be ordered and declared that HPA's use of aggravated ranges or levels of punishment constitutes elements of a separate aggravated offense

6

and thereby increased Mason's penalty for the offense; (4) it be ordered and declared that HPA's setting of the minimum term length was arbitrary and capricious, and that the HPA Guidelines are procedurally inadequate to provide uniform minimum terms, violating Mason's constitutional rights in the parole context and statutory right to a uniform sentence pursuant to HRS § 706-669(8); and (5) an order that HPA assess Mason for parole, pursuant to HRS § 706-670 (2014 & Supp. 2019).

On July 19, 2019, the State filed an answer to the Rule 40 Petition (**Answer to Petition**), requesting that the first two grounds in the petition be dismissed on the basis that they are patently frivolous or without merit, and that the third and fourth grounds be dismissed as moot because Mason was receiving a new hearing to set his minimum term.  The Answer to Petition was supported by, *inter alia*, the Declaration of HPA Administrator Tommy Johnson (**Johnson**).  Johnson averred, based on his personal knowledge and his review of HPA records regarding Mason, that the Minimum Term Order did not list the level of punishment and significant criteria on which the decision was based, and that to remedy this, Mason was granted a new minimum term hearing for Count I, to be held on July 30, 2018.

In reply to the Answer to Petition, Mason argued that the arguments made in the first two grounds for granting the Rule 40 Petition were meritorious and that grounds three and four are not moot because the HPA Guidelines are procedurally inadequate

to provide for a "uniform" determination of a minimum term, and therefore, it would be pointless to have a new minimum term hearing.

On December 19, 2018, without a hearing, the Circuit Court entered the Order Denying Petition, stating:

> [T]he Court finds that in regard to [Mason's] arguments as to the [HPA's] setting the minimum terms in regard to his case, the Petition is moot because the HPA has agreed to set a new minimum hearing.  The Court finds [Mason's] remaining arguments to be without merit, patently frivolous, and without a trace of support either in the record or from anything submitted by [Mason].

On January 7, 2019, Mason timely filed this appeal.

II.  <u>POINTS OF ERROR</u>

Mason raises eleven points of error on appeal, echoing the grounds stated in the Rule 40 Petition, and contending that: (1) the Legislature cannot delegate its authority to the HPA to prescribe a range of minimum terms of imprisonment, make its own findings, and set a particular minimum punishment range; (2) even assuming that HPA can prescribe a range for minimum term sentence, HPA's setting of a minimum term based on variable minimum term ranges increases the penalty for the crime; (3) HPA ignored and violated its guidelines and rules in setting Mason's minimum term, acting arbitrarily and capriciously; (4) HPA failed to follow the HPA Guidelines; (5) HPA failed to follow rules in setting of minimum term(s) that were established and applied in other cases; (6) HRS § 706-669(8), delegating authority to HPA to prescribe the minimum period of incarceration, is unconstitutionally vague, as HPA is left to its own devices,

8

setting minimum terms in an arbitrary and capricious manner, and the HPA Guidelines are procedurally inadequate to provide a uniform sentence; (7) the HPA Guidelines are procedurally inadequate; (8) there is no rational basis for a uniform minimum term, when the "Back-Door" is open allowing an arbitrary and capricious granting or denial of the reduction of the minimum; (9) HPA's setting a minimum term is based on criteria of "Nature of Offense" and "Degree of Injury/Loss to Person or Property;" (10) the Circuit Court erred in denying the Rule 40 Petition;[6/] and (11) the Circuit Court erred in denying the Rule 40 Petition without a hearing.

III. <u>APPLICABLE STANDARDS OF REVIEW</u>

In <u>Coulter v. State</u>, 116 Hawaiʻi 181, 184, 172 P.3d 493, 496 (2007), the supreme court stated:

> An HRPP Rule 40 petition is an appropriate means to challenge a minimum term of imprisonment set by the HPA. <u>Williamson v. Hawaiʻi Paroling Auth.</u>, 97 Hawaiʻi 156, 34 P.3d 1055 (App. 2000), <u>rev'd on other grounds</u>, 97 Hawaiʻi 183, 35 P.3d 210 (2001).
>
> "The disposition of an HRPP Rule 40 petition is based on FOF [findings of fact] and COL [conclusions of law]." <u>Raines v. State</u>, 79 Hawaiʻi 219, 222, 900 P.2d 1286, 1289 (1995). Accordingly, we review the circuit court's conclusions of law *de novo* and findings of fact for clear error. See <u>id.</u> (citing <u>Dan v. State</u>, 76 Hawaiʻi 423, 428, 879 P.2d 528, 533 (1994)).
>
> With respect to HPA decisions establishing a minimum term, this court has stated that "judicial intervention is appropriate where the HPA has failed to exercise any discretion at all, acted arbitrarily and capriciously so as to give rise to a due process violation, or otherwise violated the prisoner's constitutional rights." <u>Williamson</u>, 97 Hawaiʻi at 195, 35 P.3d at 222.

---

[6/]     In this point of error, Mason simply identifies and quotes the substance of the Order Denying Petition.

> With respect to claims of procedural violations, the court will assess whether the HPA conformed with the procedural protections of HRS § 706-669 and complied with its own guidelines, which the HPA was required to establish by statute.  HRS § 706-669(8) (1993).

IV.  DISCUSSION

Mason argues that the manner in which HPA set his minimum term(s) of imprisonment was in violation of his constitutional rights, the applicable statute, and HPA's own guidelines.  He urges this court to reject the State's argument that he is entitled to no relief based on mootness.

A.  The Minimum Term Order Violated the HPA Guidelines

HPA adopted the HPA Guidelines pursuant to HRS § 706-669(8), which states:

> The authority shall establish guidelines for the uniform determination of minimum sentences which shall take into account both the nature and degree of the offense of the prisoner and the prisoner's criminal history and character. The guidelines shall be public records and shall be made available to the prisoner and to the prosecuting attorney and other interested government agencies.

Section III of the HPA Guidelines, entitled "Issuance of Decision," states that "[t]he Order Establishing Minimum Terms of Imprisonment [ ] will include the specific minimum terms(s) . . ., the level of punishment . . ., and the significant criteria upon which the decision was based."  Mason argues, *inter alia*, that HPA violated its guidelines because the Minimum Term Order failed to specify either the level of punishment or the significant criteria upon which the decision was based, as required by the HPA Guidelines.  Mason argues that the failure to include this information was arbitrary and capricious.  The merit

10

of this argument has been acknowledged by the HPA's administrator, Johnson, and the State, and was explained by the supreme court in Coulter, 116 Hawaiʻi at 185-86, 172 P.3d at 497-98 (holding that an HPA minimum term order that failed to specify either the level of punishment or the significant criteria upon which the decision was based violated the HPA Guidelines and failed to comply with the Legislature's directive of "uniform determination" of minimum sentences).[7]

Because we, too, conclude that the Minimum Term Order was in violation of the HPA Guidelines, we do not reach the question whether the HPA violated Mason's constitutional due process rights.  See id. at 184-85, 172 P.3d at 496-97.  Mason's arguments that the HPA Guidelines are insufficient to safeguard prisoner's rights and ensure that the HPA does not arbitrarily set minimum terms of imprisonment is without merit.  See Williamson, 97 Hawaiʻi at 194, 35 P.3d at 221 (explaining that the HPA Guidelines serve as an adequate procedural protection for prisoner's rights).

---

[7]    As the supreme court explained:

> Even though these guidelines do not have the force of statutory law, compliance with such rules is required to serve the legislature's goal of "uniform determination" of minimum sentences.  HRS § 706-669(8).  Indeed, this court has described the availability of such guidelines as one of the procedural protections afforded to prisoners by statute. Deviating from such rules, without explanation, constitutes arbitrary or capricious action that violates a prisoner's right to uniform determination of his or her minimum sentence.

Coulter, 116 Hawaiʻi at 185, 172 P.3d at 497 (citing Williamson, 97 Hawaiʻi at 194-95, 35 P.3d at 221-22) (footnote omitted).

B.    Mootness

In its Answer to Petition, the State argued that, because the HPA had set a new minimum term hearing for July 30, 2018, any issue raised in the petition related to Mason's minimum term setting should be dismissed as moot.  On appeal, the State represents that HPA held Mason's new minimum term hearing on April 26, 2019, and that a new order has been issued, but acknowledges that the April 26, 2019 hearing is not part of the record on appeal.  The new order is not part of the record on appeal.

On the record before us, we cannot determine whether the new minimum term hearing and decision provided an adequate explanation pursuant to Coulter for the setting of Mason's new minimum term of imprisonment, and therefore, cannot determine whether the issue is moot.  For that reason, as well as the following reason, we conclude that this case should be remanded for a hearing to permit Mason to challenge the HPA's new minimum term order.

Further, as brought to our attention by the State in a post-briefing submission, since the April 26, 2019 hearing in this case, the supreme court ruled that HPA must set forth a written justification or explanation, beyond simply enumerating the broad criteria considered by HPA, when HPA determines that the minimum term of a felony offender is to be set at a Level II or Level III punishment.  See Lewi v. State, 145 Hawaiʻi 333,

348-49, 452 P.3d 330, 345-46 (2019).  In a lengthy footnote, the supreme court acknowledged that it was announcing a new rule, which might or might not be applied retroactively.  Id. at 349 n.21, 452 P.3d at 346 n.21.  The court declined to select either a purely prospective or a fully retrospective application of the new rule and instead chose a middle ground or "pipeline" retroactive effect.  Id.  The supreme court applied it to the petitioner in that case and "to all cases that are on direct review or not yet final as of the date of this decision."  Id.  As the initial Minimum Term Order was clearly arbitrary and capricious, and the record before us is inadequate to determine whether a colorable claim for relief might yet exist concerning the new minimum term order, we conclude that questions remain as to whether HPA adequately justified its minimum term determination, and Mason should not be required to initiate a new HRPP Rule 40 proceeding to raise any outstanding issues concerning HPA's new determination of his minimum term.  Although these circumstances were not specifically before the supreme court in Lewi, we conclude that they properly fall within the middle ground adopted by the court, and the new rule set forth in Lewi should be applied in this case.  On remand, if applicable, Mason may amend his Rule 40 Petition to include a challenge to the new minimum term order based on Lewi.

As set forth above, the Circuit Court's December 19, 2018 Order Denying Petition is affirmed in part and vacated in

part, and this case is remanded to the Circuit Court for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawaiʻi, February 5, 2021.

On the briefs:

Tad Mason,
Petitioner-Appellant, *Pro Se*.

Craig Y. Iha,
Laura K. Maeshiro,
Deputy Attorneys General,
for Respondent-Appellee
 STATE OF HAWAIʻI.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge